# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**HOUSING & REDEVELOPMENT**
**INSURANCE EXCHANGE,**                      :

                                         :

     **Petitioner**          :          **CIVIL ACTION NO. 3:22-1565**

                                         :

     **v.**                  :          **(JUDGE MANNION)**

                                         :

**MARCIA FUDGE, SECRETARY**
**OF THE UNITED STATES**                     :
**DEPARTMENT OF HOUSING**
**AND URBAN DEVELOPMENT,**                   :

                                         :

     **Respondent**          :

## <u>MEMORANDUM</u>

Pending before the court is petitioner's motion for temporary restraining order and preliminary injunction ("TRO/PI") or, in the alternative, a motion for stay of final agency action (Doc. 2) and a motion to expedite (Doc. 24). Upon review, the petitioner's motion for TRO/PI or, in the alternative, a motion for stay of final agency action will be **DENIED** and the petitioner's motion to expedite will be **DISMISSED AS MOOT**.[1]

---

[1] It is noted that the petitioner had requested in its motion that the court schedule a preliminary injunction hearing. Rule 65 of the Federal Rules of Civil Procedure does not require a hearing. *See* Fed.R.Civ.P. 65(a)(1) (requires only "notice to the adverse party"). *See also Bradley v. Pittsburgh Bd. of Educ.,* 910 F.2d 1172, 1175 (3d Cir. 1990) ("The applicable Federal Rule does not make a hearing a prerequisite for ruling on a preliminary injunction." It is in the discretion of the court whether to hold an evidentiary

*(footnote continued on next page)*

Documentation submitted by the parties reflects that certain Housing and Urban Development ("HUD") programs are administered by local public housing agencies ("PHAs"). *See* 42 U.S.C. §1437, *et seq.* An Annual Contributions Contract ("ACC") between HUD and the PHAs requires the PHAs to maintain certain insurance coverages. *See* 42 U.S.C. §1436c, 24 C.F.R. §965.205(a). Usually, the required insurance must be obtained through "open and competitive bidding." *See* 24 C.F.R. §965.205(a). However, such competitive bidding is not required if a PHA purchases the insurance from a HUD-approved nonprofit insurance entity owned and controlled by PHAs, referred to as a Qualified PHA-Owned Insurance Entity ("QPIE"). *Id.*

---

hearing where there is an absence of genuine factual dispute. *Bradley*, 910 F.2d at 1175-76 ("[A] district court is not obliged to hold a hearing when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm.")

Here, the court allowed ample time and leeway for briefing on the motion and indicated that it would determine whether a hearing was necessary after briefing was complete. In conjunction with the motion and briefing, the parties submitted various exhibits. While the petitioner made conclusory arguments with respect to the irreparable harm factor, it provided no support for its contentions. Respondent pointed this out in its briefing. Despite filing other materials, the petitioner did not attempt to remedy this deficiency. As discussed herein, because the court finds that the petitioner has presented no colorable basis for its contention of irreparable harm, a factor critical to its success on the pending motion, the court decides the motion without a hearing.

In accordance with Congressional instruction, in 1993, HUD promulgated a regulation which provides the standards for QPIEs. *See* 24 C.F.R. §965.205. Pursuant to the regulation, an eligible QPIE must be created by PHAs and limit participation to PHAs and to nonprofit entities associated with PHAs that engage in activities or perform functions only for housing authorities or housing authority residents. 24 C.F.R. §965.205(a), (c). If a QPIE does not meet the requirements of the regulation, HUD may revoke its approval. *See* 24 C.F.R. §965.205(e).

The relevant procedural background of this case demonstrates that on February 24, 1989, HARIE was approved to forego the competitive bidding process when offering insurance to PHAs.[2] Years later, on or about July 1, 1995, HARIE began insuring non-PHA municipalities and their political subdivisions, which apparently led to an indication by HUD that HARIE's QPIE status would be revoked. (*Id.*). With various communications being passed between HUD and HARIE over the course of years with respect to

---

[2] The procedural background has been taken from the Secretary's order denying HARIE's appeal of the decision of the ALJ with which HARIE has noted no dispute. (Doc. 1-1, Ex. A). In any event, the court may take judicial notice of the procedural background set forth therein. See *Assaad v. Fudge*, 2022 WL 17338050, at *2 (D.D.C. Nov. 30, 2022) (citing *Vasser v. McDonald*, 228 F. Supp. 3d 1, 10 (D.D.C. 2016) ("[C]ourts have taken judicial notice of Final Agency Decisions, especially for background information such as dates of filings[.]")).

this issue, ultimately, a letter dated October 10, 2000, was sent from HUD to HARIE indicating that HUD was "withdrawing the pending non-approval of HARIE as a PHA-owned insurance organization that qualifies as complying with 24 C.F.R. §965." *Id.*

Nothing further occurred with respect to the matter until February 2017 when the parties again began exchanging communications over a period of time with respect to whether HARIE was compliant with the bid exemption regulation. On the premise that HARIE was non-complaint with the requirements of the regulation, HUD indicated HARIE had two options: (1) create a distinct entity to legally separate HARIE's public housing from non-public housing business; or (2) request a waiver of the regulation's requirements. According to the record, HARIE did neither.

On September 14, 2018, HUD informed HARIE of its intent to revoke HARIE's approval as a QPIE under 24 C.F.R. §965 Subpart B within sixty days. On September 20, 2018, HARIE requested a hearing to challenge the revocation in accordance with 24 C.F.R. §965.205(e), after which HUD indicated it would take no action on the matter until a decision was made by a hearing officer. On September 28, 2018, HUD notified the Pennsylvania Public Housing Agency that it had initiated the process to revoke HARIE's

approval under 24 C.F.R. §965.205, that a hearing had been requested, and that no action would be taken pending the hearing.

No further action was taken by HUD on the revocation until September 24, 2021, when a "Superseding Notice of Withdrawal" was issued withdrawing approval of HARIE as a QPIE pursuant to 24 C.F.R. §965.205(e). It was noted that this letter superseded any prior correspondence and "serve[d] to notify HARIE of HUD's determination and provide the opportunity and procedure to request a hearing to challenge this determination." HARIE was notified of the procedures to challenge the withdrawal action in accordance with 24 C.F.R. Part 26 Subpart A. Again, HARIE requested a hearing on the revocation, and a hearing was set to commence before an administrative law judge ("ALJ") on March 14, 2022.[3] In the meantime, HUD filed a complaint setting forth two bases for revoking HARIE's approval as a QPIE: (1) HARIE was not exclusively owned and controlled by PHAs, and (2) HARIE did not limit participation to PHAs. HARIE filed an answer to the complaint with affirmative defenses on December 3, 2021.

_____

[3] Upon request of the parties, the hearing was rescheduled to May 23, 2022.

On February 23, 2022, the ALJ granted HUD's motion to strike HARIE's affirmative defenses, in part, striking HARIE's defenses that the regulation exceeded statutory authority. The ALJ denied the motion, in part, declining to strike HARIE's defenses as to deprivation of due process, waiver, ratification, and estoppel.

The parties then filed dispositive motions. Initially, on April 22, 2022, HARIE filed a motion to dismiss HUD's complaint on four grounds: (1) HUD had not promulgated a regulation requiring exclusivity in ownership or control; (2) Congress had not enacted a statute requiring QPIEs to be exclusively owned or controlled by PHAs; (3) the terms of ownership and control are not defined by the relevant regulation or statute; and (4) HARIE was not in violation of the regulation or statute because it "insures municipalities and their political subdivisions as the same exclusively and solely provide essential services to PHAs and housing authority residents including but not limited to water services, sewer services, police protection, fire protection, waste collection, public education, etc."

On the same date, HUD filed a motion for summary judgment arguing: (1) there was no genuine issue of material fact; (2) HARIE does not limit participation to PHAs and entities only serving PHAs because it insures municipalities and their subdivisions; (3) HARIE is not solely owned and

controlled by PHAs because the majority of its voting members were non-PHAs, and one of HARIE's board members represented a non-PHA member; and (4) HARIE's affirmative defenses of estoppel, ratification, and denial of due process failed as a matter of law.

Shortly after the dispositive motions were filed, by order dated April 26, 2022, the ALJ ruled upon a motion to compel discovery by HARIE. In doing so, the ALJ noted that HUD was previously directed to provide a supplementary privilege log. In all other respects HARIE's motion to compel was denied.

On May 13, 2022, the ALJ ruled on the parties' dispositive motions. The ALJ denied HARIE's motion to dismiss Counts 1 and 2. The ALJ further denied HUD's motion for summary judgment as to Count 1 finding that HUD "had not established every material fact regarding the ownership and control of [HARIE]." The ALJ granted the motion for summary judgment as to Count 2 finding that HUD demonstrated that material facts were not in dispute and material facts supported Count 2 because HARIE does not limit participation to PHAs and admitted that it provides insurance to municipalities and other local government subdivisions. The ALJ found that a QPIE must meet all eligibility requirements in order to be approved to retain approval as a QPIE.

The ALJ dismissed Count I of the complaint without prejudice as moot and ordered that HARIE's status as an approved QPIE be revoked.

On June 10, 2022, HARIE filed an appeal of the ALJ's May 13, 2022, decision to the Secretary of HUD. By order dated August 31, 2022, the Secretary denied HARIE's appeal and the ALJ's May 13, 2022, ruling on the dispositive motions was affirmed. Specifically, it was found that the ALJ correctly denied HARIE's motion to dismiss and granted HUD's motion for summary judgment as to Count 2 of the complaint. It was further found that HARIE's affirmative defenses of due process, ratification and estoppel were not legally sufficient. Finally, it was found that HARIE failed to preserve the ALJ's ruling on the motion to compel for appeal and waived its objection to the notice of hearing. (Doc. 1-1).

By way of this civil action, HARIE has now filed a petition for review of final agency action under the Administrative Procedures Act ("APA"), 5 U.S.C. §§701-706, challenging HUD's revocation of its prior approval as a QPIE. (Doc. 1). In conjunction with this action, HARIE has filed the pending TRO/PI motion seeking to have the court order HUD to immediately restore it to an approved qualified PHA-owned insurance entity under 24 C.F.R. §965, Subpart B arguing that PHAs and redevelopment authorities will be

immediately and negatively impacted in their ability to plan and budget their insurance coverages upon their renewal period.

The TRO/PI motion presents that HUD's decision to rescind HARIE's prior approval as a qualified PHA-owned insurance entity violates applicable HUD regulations and any such action is arbitrary, capricious and an abuse of discretion, and otherwise not in accordance with the law. HARIE contends it has been denied due process in that it has not been provided an administrative remedy for review of HUD's decision under 24 C.F.R. §965.205(e) or any other administrative means. Further, HARIE argues that HUD's order revoking its status is in excess of statutory jurisdiction, authority and/or limitations, and is without observance of procedure required by law. As a result of HUD's actions, HARIE argues that PHAs and Redevelopment Authorities will be immediately and negatively impacted because their ability to plan and budget their insurance coverages will be impacted if the status quo is not preserved. HARIE requests that the court issue a TRO/PI enjoining HUD from revoking its prior approval as a qualified PHA-owed insurance entity.

Federal Rule of Civil Procedure 65 is the rule which governs TROs and PIs. These motions are judged against exacting legal standards. Injunctive relief "is not granted as a matter of right." *Kershner v. Mazurkiewicz*, 670 F.

2d 440, 443 (3d Cir. 1982). It "is an 'extraordinary remedy.'" *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018) (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). A motion for TRO/PI is properly granted only in cases where such relief is the "only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air. Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). The grant or denial of a motion for injunctive relief is within the sound discretion of the district judge. *Kershner v. Mazurkiewicz*, *supra.* (citing *Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.*, 630 F.2d 120, 136 (3d Cir. 1978), *cert. denied*, 449 U.S. 1014 (1980)). "It has been well stated that upon an application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937).

"When evaluating a motion for preliminary injunctive relief, a court considers four factors: (1) has the moving party established a reasonable likelihood of success on the merits (which need not be more likely than not); (2) is the movant more likely than not to suffer irreparable harm in the absence of preliminary relief; (3) does the balance of equities tip in its favor; and (4) is an injunction in the public interest?" *Reed v. Garcia*, 2023 WL 1864885, at *2 (M.D. Pa. Feb. 9, 2023) (quoting *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019) *reversed on other grounds by*

141 S. Ct. 1868 (U.S. 2021)). "The first two factors are prerequisites for a movant to prevail." *Id.* (quoting *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018)). "[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *In Re Arthur Treacher's Franchise Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reed*, 2023 WL 1864885, at *2 (quoting *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)).

Looking at the prerequisites, perhaps the most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the *applicant* is likely to suffer irreparable harm before a decision on the merits can be rendered. *See Continental Group, Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 356 (3d Cir. 1980) (emphasis added). Irreparable injury is "potential harm which cannot be redressed by a legal or equitable remedy following a trial." *Instant Air Freight*, 882 F.2d at 801. A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm." *Id*. The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the

irreparable harm at the time the preliminary injunctive relief is to be issued. *Id*. Speculative injury does not constitute a showing of irreparable harm. *Continental*, 614 F.2d at 359; *see also Public Serv. Co. v. West Newbury*, 835 F.2d 380, 383 (1st Cir. 1987). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Instant Air Freight*, 882 F.2d at 801 (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1964)).

Without more, HARIE claims that, if its prior approved status as a QPIE is rescinded by HUD, it will suffer immediate irreparable injury because the potential economic loss would be so great as to threaten destruction of its PHA business. HARIE posits that approximately 50% of its policies are underwritten for PHAs. Where the economic loss involved in a matter would be so great as to threaten destruction of the moving party's business, HARIE argues that a preliminary injunction should be issued to maintain the status quo.

Under 24 C.F.R. 965, Subpart B, HARIE argues that it enjoys a bidding waiver that allows PHAs to obtain their insurance without the necessity of competitive bidding. According to HARIE, this waiver allows it to offer quality insurance coverage to PHAs at a cost effective premium while providing

comprehensive coverage since PHAs operate under restricted budgets. HARIE argues that for thirty-seven (37) years it has been providing low-cost affordable insurance to housing and redevelopment authorities upon which these authorities can rely and budget accordingly. As argued by HARIE, revocation of its QPIE status will not only negatively impact it but will also negatively impact PHAs which rely on HARIE for affordable and dependable insurance coverage. HARIE argues that revocation of its QPIE status will return PHAs to the times prior to the idea of reciprocal exchange when PHAs paid exorbitant premium costs for insurance coverage.

In considering HARIE's arguments relating to irreparable injury, the court first notes that while it is admirable that HARIE is concerned about the economic impact of its QPIE status upon PHAs, HARIE has not demonstrated that it has standing to seek injunctive relief on behalf of the PHAs. As emphasized above, the *applicant* for injunctive relief must show that *it* will suffer immediate irreparable harm if an injunction is not issued. Here, HARIE must demonstrate that it will suffer irreparable harm and cannot rely on any potential harm to PHAs to support its request for injunctive relief.

To the extent HARIE argues that revocation of its QPIE status threatens destruction of its business, it provides no factual support. Although HARIE puts forth that approximately 50% of its insurance policies are for

PHAs, it has not put forth any facts demonstrating the affect the income generated from the PHAs has on the bottom line of its business. Moreover, HARIE has not put forth any facts that loss of its QPIE status would affect its bottom line at all since it is still able to obtain PHA business by participating in the competitive bidding process. HARIE has provided no factual support that participation in the competitive bidding process to procure PHA policies would adversely affect or lead to the loss of its business.

Although courts have recognized that loss of a business or being forced out of business may constitute irreparable harm warranting injunctive relief, the movant faces a substantial burden to demonstrate that, absent injunctive relief, the risk of that harm is more than speculative. *See e.g.*, *Minard Run Oil Co. v. United States Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011) ("As a general matter, a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement, but an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business." (internal citations and quotation omitted)). *But see also, In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1146 (3d Cir. 1982) (finding that injunctive relief was not warranted because the plaintiff did not establish that it would in fact be forced into bankruptcy without the injunction); *Instant Air Freight Co.*, 882 F.2d at 802

- 14 -

(finding that injunctive relief was not warranted because the plaintiff did not proffer evidence that it would, in fact, go out of business without the injunction); *Newlife Homecare Inc. v. Express Scripts, Inc.*, 2007 U.S. Dist. LEXIS 33031, at *11-14, 2007 WL 1314861 (M.D. Pa. May 4, 2007) ("[T]he law requires convincing proof that a business will in fact cease to exist or be forced into bankruptcy for such an eventuality to be considered irreparable harm."); *Hillard v. Guidant Corp.*, 37 F.Supp.2d 379, 383 (M.D. Pa. 1999).

HARIE has argued that it will suffer economic loss so great as to threaten destruction of its business if an injunction is not issued. HARIE has not however factually supported that argument. It has therefore not demonstrated that it is entitled to injunctive relief.

In addition to failing to demonstrate that any economic harm it would suffer would be destructive to its business, HARIE has also failed to demonstrate that any alleged economic harm is imminent. The moving party must establish that the harm is imminent and probable. *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997). In order to be imminent, the injury cannot be remote or speculative; it must be poised to occur before the court can decide the matter on the merits. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 263-64 (3d Cir. 2000). As pointed out by HUD, PHAs are not required to renew their insurance contracts annually and are

permitted to modify existing contracts with respect to the period of performance. HARIE has not presented any facts with respect to how many PHAs are currently up for renewal such that an injunction must issue to prevent any alleged economic harm prior to a decision on the merits in this case.

In light of the foregoing, HARIE has not demonstrated it will suffer immediate irreparable injury as a result of HUD's revocation of its QPIE status. Because HARIE has not demonstrated what has been considered the most important of the prerequisite factors, the court need not consider the other factors for obtaining injunctive relief. HARIE's motion for TRO/PI will be denied.

As alternative relief, HARIE seeks a stay of agency action pending judicial review pursuant to 5 U.S.C. §705[4]. As the court has found that HARIE

---

[4] Pursuant to 5 U.S.C.A. § 705,

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C.A. §705.

has failed to demonstrate irreparable injury, any request for a stay under §705 will be denied.

As a final matter, HARIE has pending before the court a motion to expedite a hearing on its motion for TRO/PI (Doc. 24). In the court's discretion, it has determined that the motion can be resolved without the need for a hearing. As such, HARIE's motion to expedite will be dismissed as moot.

An appropriate order shall issue.

s/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 29, 2024**
22-1565-01